IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM FESTUS COKER, | No. 2:14-CV-2752-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| _____/ | |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 14) and defendant's cross-motion for summary judgment (Doc. 15).

/ / /

/ / /

/ / /

# I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on July 27, 2011. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on March 7, 2013, before Administrative Law Judge ("ALJ") Peter F. Belli. At the hearing, plaintiff alleged that his disability began on September 6, 2011. In a May 29, 2013, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): degenerative disc disease, depressive disorder, and anxiety disorder;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: The claimant can perform light work; he is able to occasionally stoop, crouch, crawl, and kneel, he is restricted from balancing, climbing, ladders, ropes, and scaffolds, and from exposure to unprotected heights and machinery; he has no limits on remembering and carrying out simple job instructions and is able to remember and carry out detailed or complex instructions occasionally; he is able to interact appropriately with the public, co-workers, and supervisors; he is able to make judgments on normal work activities; he is able to adjust to changes in the workplace;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on September 24, 2014, this appeal followed.

# II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to

support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III.  DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ failed to provide sufficient reasons for rejecting his testimony as not credible; and (2) the ALJ failed to provide sufficient reasons for rejecting the opinion of treating doctor Anita Blosser, M.D.

**A.      Credibility Assessment**

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

1  evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

2  credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d

3  1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007),

4  and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

5             If there is objective medical evidence of an underlying impairment, the

6  Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

7  because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

8  341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

9  > The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce
10 > objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that
11 > the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship
12 > be a reasonable inference, not a medically proven phenomenon.

13 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in
   Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).
14

15            The Commissioner may, however, consider the nature of the symptoms alleged,

16 including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

17 947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

18 claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

19 testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

20 prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

21 physician and third-party testimony about the nature, severity, and effect of symptoms.  See

22 Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

23 claimant cooperated during physical examinations or provided conflicting statements concerning

24 drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

25 claimant testifies as to symptoms greater than would normally be produced by a given

26 impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

1  Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

2        Regarding reliance on a claimant's daily activities to find testimony of disabling
3  pain not credible, the Social Security Act does not require that disability claimants be utterly
4  incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has
5  repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . .
6  does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v.
7  Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th
8  Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a
9  claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic
10 restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the
11 claimant was entitled to benefits based on constant leg and back pain despite the claimant's
12 ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home
13 activities are not easily transferable to what may be the more grueling environment of the
14 workplace, where it might be impossible to periodically rest or take medication"). Daily
15 activities must be such that they show that the claimant is ". . .able to spend a substantial part of
16 his day engaged in pursuits involving the performance of physical functions that are transferable
17 to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard
18 before relying on daily activities to find a claimant's pain testimony not credible. See Burch v.
19 Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

      In assessing plaintiff's credibility, the ALJ outlined the following testimony:

> . . .[T]he claimant testified that he has experienced three back injuries (1999, 2007, and August 2011) and feels that he has been totally disabled since then and not able to work full-time. He reported that he has constant back pain, has to change position, and is bipolar and depressed. He noted that he is optimistic about his future, has gone to Shasta College from January to June, and has plans to go back. He stated that he works very part-time and hopes to get back to full-time work in the future. He reported that he lives at a homeless shelter with three others and gets along well with them. He noted that he cooks for himself, makes his bed, and does laundry. He stated that he walks several blocks to the grocery store and carries the groceries home. He reported that his kids visit him and that

> he volunteers at the homeless shelter twice a week and cleans toilets and moves boxes and furniture. He noted that he picks up his daughter who weighs 30 pounds and cooks for his kids.
>
> The claimant stated that he sometimes wears a back brace, takes Depakote, Sertaline, Cymbalta, Abilify, and Norco and has no trouble from his medications. He reported that he sometimes feels dizzy. He noted that he has not had any back surgery and none is scheduled. He noted that he has groin and leg pressure from an injury in the Navy, back pain, migraines, depression, and anxiety, and cannot work because he cannot reach, sit for over an hour, or relax, but can walk for at least a mile at one time. He stated that he could work an eight-your day for 40 hours per week if he had the option to sit or stand, but because of depression, he may call in and not show up.

Additionally, the ALJ considered a third-party statement:

> The undersigned has also considered the observations of the claimant's ex-wife, Melinda Casey, as expressed in a Third Party Function Report (Ex. 5E) and finds that, while they are essentially credible, they do not support a conclusion that the claimant is precluded from all work activity. Ms. Casey largely reiterated the claimant's description of his daily activities and limitations as described above and in Ex. 3E. Ms. Casey noted that the claimant helps with the kids by playing on the floor with them, changing diapers, and cooking for them.

In finding plaintiff's allegations of totally disabling pain not credible, the ALJ provided the following rationale:

> In terms of the claimant's alleged debilitation due to back issues and depression, the record shows a history of chronic low back pain with past radiographic studies indicating either a T10 or L1 wedge fracture. However, the claimant's physical function is good with normal joint range of motion and no neurological deficits. He is able to walk, move about normally, and use his arms, hands, and legs in a satisfactory manner. The claimant walks, rides a bicycle, uses public transportation, carries groceries several blocks, and actively plays with and cares for his three preschool children. Although he may be precluded from very heavy lifting, he frequently performs light-medium lifting when he routinely lifts his preschool children and when volunteering at a homeless shelter. Despite becoming depressed and anxious at times, the claimant is able to think, communicate, act in his own interests, adjust to ordinary emotional stresses, get along with others, do his usual activities, and remember and follow basic instructions. Mentally, the claimant is able to perform simple repetitive tasks, make simple decisions, and keeps a schedule despite occasional feelings of depression and anxiety. The claimant has submitted many job applications and has attended Shasta College. He reported to Dr. Blosser of Tehama County Health in October 2011 that he had "gotten

himself together" and was beginning to move on by getting himself disability, as he wanted to go back to school and get a desk job. Apparently, the claimant had been working with a vocational rehabilitation counselor who said that he could qualify for a desk job once he earned a two-year degree (Ex. 11F & 18F).

Plaintiff argues that the ALJ improperly relied on his activities of daily living in determining that his testimony was not credible. According to plaintiff: "The ALJ may not rely on evidence of activities that do not contradict the claimant's testimony or fail to meet a threshold of having application in the work setting." Plaintiff adds: "Simply put, evidence that a claimant can participate in basic human function" is not determinative. Plaintiff repeatedly stresses that the Social Security Act does not require claimants to vegetate in a dark room.

Plaintiff's argument is unpersuasive. As discussed above, in assessing credibility the ALJ may cite daily activities that show the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. In this case, the ALJ cited such activities. For example, the ALJ noted that plaintiff reported walking several blocks for groceries and carrying the groceries home. Walking and carrying are both work-related physical functions. Similarly, plaintiff reported lifting his child frequently. Again, lifting is a work-related function. Plaintiff also reported moving furniture and boxes for the homeless shelter. Finally, plaintiff testified that he had frequently worked part-time jobs and had hopes of returning to full-time work at a desk job.

Likewise, as to alleged mental limitations, the ALJ cited daily activities directly bearing on work-related functions. For example, plaintiff reported he had attended classes at Shasta College, indicating an ability to follow instructions and complete tasks. Plaintiff also reported that he gets along well with people around him, indicating an ability to get along with co-workers, supervisors, and the public, which are work-related functions.

/ / /

/ / /

### B. Evaluation of Medical Opinions

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

As to Dr. Blosser, who was plaintiff's treating doctor at Tehama County Mental Health, the ALJ stated:

> In November 2011, Dr. Blosser said MRI reports were not as bad as the claimant was hoping, as he wanted to obtain disability income so he could go back to school as he had made 600 job applications without a single hit. Specifically, a thoracic MRI revealed an old appearing fracture involving the anterior aspect of the T11 and a very small posterior disc protrusion at T5-6 that was causing mild central canal stenosis.  A lumbar MRI revealed small disc protrusions at L3-4 and L4-5 that were broad based, but worse on the left and were causing mild lateral recess stenosis and neural foramen compromise and small disc protrusion into the inferior endplate of L1 with a small anterior disc bulge, a small annulus tear and an osteophyte developing on the anterior inferior aspect of the L1 vertebral body (Ex. 5F).  Dr. Blosser prescribed Cymbalta and the claimant was doing better by December 2011.  Sleep had improved.  Dr. Blosser diagnosed chronic back pain and depression/anxiety.  She gave the claimant a list of muscle relaxants to research and (again) referred him to a back specialist.  She also prescribed more Cymbalta and referred the claimant to mental health (Ex. 11F).
>
> * * *
>
> Dr. Blosser completed a Lumbar/Thoracic Medical Source Statement Questionnaire in July 2012 in which she found the claimant limited to less than sedentary work, subject to good and bad days and likely to be absent for three or more days per month due to arthritis, degenerative disc disease, and old spinal fracture.  Dr. Blosser assessed that the claimant probably could continue to study with adequate pain medication, but will always require frequent changes of position and would likely worsen with time.  She noted that the claimant could no longer do physical labor, which had been his source of income, and that pain occasionally interferes with attention and concentration (Ex. 14F).  The undersigned assigns minimal weight to Dr. Blosser's assessment, as it is not supported by the claimant's activities of daily living and the remainder of the evidence of record.

Plaintiff appears to argue that the ALJ's rationale for rejecting Dr. Blosser's opinions – because they were inconsistent with plaintiff's own statements as to his daily activities – is flawed because "William Coker testified consistent with what Dr. Blosser opined." This "argument" is premised on the notion that plaintiff's subjective complaints provide

9

1  objective evidence supporting a doctor's opinion.  To the contrary, where a doctor's opinion is
2  supported only by subjective complaints, the ALJ may reject it.
3        In any event, the court finds no error in the ALJ's analysis.  Notably, Dr. Blosser
4  opined that plaintiff could no longer perform physical labor.  This opinion is clearly inconsistent
5  with plaintiff's own statements that he performs part-time jobs, attends college classes, rides a
6  bike, and can move boxes and furniture.  By outlining the daily activities contradicting Dr.
7  Blosser's opinion, the ALJ provided specific and legitimate reasons supported by the record for
8  rejecting the doctor's assessment.

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 14) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 15) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: March 21, 2016

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE